

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00302-CR

Christopher Lee **POWELL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR0452
Honorable Frank J. Castro, Judge Presiding

Opinion by:    Adrian A. Spears II, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Adrian A. Spears II, Justice

Delivered and Filed: October 1, 2025

AFFIRMED AS MODIFIED

After a jury trial, Christopher Lee Powell was found guilty of murder and sentenced to forty years of imprisonment. On appeal, he argues there was insufficient evidence from which the jury could reject his claim of self-defense. He further complains of jury charge error and prosecutorial misconduct. Finally, he argues there was insufficient evidence to support the trial court's determination of court costs. Because we agree there was insufficient evidence to support

the trial court's determination of costs in the amount of $9,750.00, we modify the judgment to reflect court costs in the amount of $290.00. As modified, we affirm the trial court's judgment.

## SUFFICIENCY

On appeal, Powell argues the evidence is legally insufficient to support the jury's implicit rejection of his self-defense claim. In Texas, deadly force used in self-defense is a defense to prosecution for murder if that use of force is "justified." *See* TEX. PENAL CODE §§ 9.02 ("It is a defense to prosecution that the conduct in question is justified under this chapter."); 9.31–9.32 (setting forth substantive requirements for establishing claim of self-defense). Section 9.31 of the Penal Code provides that, subject to certain exceptions, a person is justified in using force against another "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id*. § 9.31(a). The use of force is not justified in response to verbal provocation alone, or if the actor provoked the other's use or attempted use of unlawful force. *Id*. § 9.31(b). Thus, if an actor "provoked the difficulty," he may forfeit his right to self-defense. *See id*. 9.31(b)(4) (explaining that the use of force against another is not justified if the actor provoked the other's use or attempted use of unlawful force unless the actor abandoned the encounter, or clearly communicated to the other "his intent to do so reasonably believing he [could] not safely abandon the encounter," and "the other nevertheless continue[d] or attempt[ed] to use unlawful force against the actor"). A "reasonable belief" in this context is defined as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id*. § 1.07(a)(42).

A person is justified in using deadly force against another (1) if he would be justified in using force against the other under section 9.31, and (2) "when and to the degree the actor reasonably believes the deadly force is immediately necessary: (A) to protect the actor against the

other's use or attempted use of unlawful deadly force, or (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery." *Id.* § 9.32(a). The actor's belief that the deadly force was immediately necessary is presumed to be reasonable under certain circumstances, including that the actor "knew or had reason to believe that the person against whom the deadly force was used" was committing or attempting to commit one of several enumerated serious felony offenses, and that the actor did not provoke the person against whom the force was used and was not otherwise engaged in criminal activity, other than a Class C misdemeanor traffic violation. *Id.* § 9.32(b).

"In assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). "We measure the sufficiency of the evidence against the hypothetically-correct jury charge, defined by the statutory elements as modified by the charging instrument." *Edward v. State*, 635 S.W.3d 649, 656 (Tex. Crim. App. 2021).

"The jury is the sole judge of the weight and credibility of the evidence." *Id.* at 655. "When considering a claim of evidentiary insufficiency, we must keep in mind that a juror may choose to believe or disbelieve all, some, or none of the evidence presented." *Id.* "Further, while jurors may not base their decision on mere speculation or unsupported inferences, they may draw reasonable inferences from the evidence." *Id.* "The evidence is sufficient to support a conviction, and thus the jury's verdict is not irrational, if 'the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict.'" *Id.* at 655-56 (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)).

"When faced with conflicts in the evidence, a reviewing court shall presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination." *Id*. at 656. As a reviewing court, we "may not re-evaluate the weight and credibility of the record evidence in the record and thereby substitute our judgment for that of the fact finder." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Further, "[a]lthough the parties may disagree about the logical inferences that flow from undisputed facts, '[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.'" *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)). "However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper v. State*, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007). "Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018).

"[I]n a claim of self-defense . . . that would justify a defendant's use of force against another, the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues." *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). "The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue." *Id*. "By contrast, the State's burden of persuasion 'is not one that requires the production of evidence; rather it requires only that the State prove its case beyond a reasonable doubt.'" *Id*. (quoting *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003)). "Thus, '[i]n resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-

defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.'" *Id*. at 609 (quoting *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)). "[T]he issue of self-defense is an issue of fact to be determined by the jury," and a "'jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory.'" *Id*. (quoting *Saxton*, 804 S.W.2d at 914).

The undisputed evidence in this appeal shows that on April 9, 2021, Powell shot Ibrahim Suarez, a thirty-seven-year-old man, with a firearm, thereby causing Suarez to suffer from three gunshot wounds that caused his death. One bullet entered at Suarez's right ear, traveling back and upwards in his head. Two other bullets entered his left upper chest wall, going through his heart. At the time of the shooting, both Powell and Suarez were stopped at an intersection. Powell was seated in the driver's seat of his vehicle, and Suarez was standing outside his car. Video evidence of the scene shows blood splatter from Suarez's wounds on the driver's-side rear door of Powell's vehicle.

Surveillance video from a nearby convenience store shows that on April 9, 2021, Powell parked his vehicle at a gasoline pump and entered the convenience store with a man, later identified as Jacob Campbell, while Powell's wife, Crystal Davis, waited in the car. A minute later, Suarez parked his vehicle on the other side of the same gasoline pump and entered the convenience store. Surveillance video from inside the convenience store shows no interaction between Powell and Suarez, or Campbell and Suarez. The surveillance video further shows Powell and Campbell paying and leaving the store first. Powell then got inside his car and sat in the driver's seat while Campbell pumped gasoline. A minute later, Suarez left the convenience store and also began

pumping gas. Campbell and Suarez were on opposite sides of the same gasoline pump for approximately twenty seconds.

The convenience store had two exits at opposite directions from the gasoline pumps. Surveillance video shows Powell leaving the gasoline pump and turning toward the direction of the same exit where he had entered the gas station. In doing so, Powell's car passed several gasoline pumps. When Powell's car reached the last pump, instead of exiting in the same direction he had entered the parking lot, Powell's car u-turned around the gasoline pumps to go back in the same direction as where Suarez was still pumping gas. As Powell's vehicle approached where Suarez was still pumping gasoline, Powell slowed the car, almost came to a stop, and rolled down his window. Suarez, who had approached Powell's driver's-side door, appeared to exchange words with Powell. Suarez then gestured by raising his hand towards Powell as Powell drove away. Suarez then took the gasoline pump out of his vehicle, got into his vehicle, and sped off in the same direction as Powell's vehicle.

In his police interrogation, the video of which was admitted in evidence, Powell claimed that Suarez had been "staring at [him] very intrusively." Before he drove away from the gasoline pump, Powell remarked to his wife that Suarez was really staring them down. According to Powell, his wife replied that Suarez had been "staring at [her] the whole time" and was "creeping [her] out." In his brief, Powell claims that he turned back around the gasoline pumps because his GPS directed him to leave that way. Powell points to the portion of the interrogation video where he stated that he was just following his GPS during that time. Powell told the police that as he drove by the gasoline pump where Suarez was still pumping gasoline, Suarez threw "his hands up" and "call[ed] [Powell] a bitch." Powell then stated that Suarez followed him to where Powell was stopped at a red light, got out of his car, was "angrily gesturing," and was yelling "You're a bitch!"

Powell stated that Suarez, while yelling, hit Powell's driver's-side window with his bare fists. According to Powell, Suarez then went back to his car, but before he could get into his car, turned around and began walking back to Powell's car. Powell admitted he did not see Suarez with a weapon, but stated it was dark and he did not know what Suarez was doing. Powell told the police that when Suarez was "still at a distance from [Powell]," Powell shot a "warning shot" back in Powell's direction. Powell stated that Suarez "kept coming" and made a couple of more steps. Powell then shot Suarez three times. He then called 911. The 911 recording of Powell's call was introduced in evidence. The recording begins with Powell stating, "N*gger threatened my life."

Crystal Jackson testified that she was driving the car that was stopped behind Suarez's car at the red light. When she approached the red light, Suarez was outside of his car and was at the window of the car in front of him. Jackson testified she quickly realized that Suarez was talking to someone in the car in front of him. Jackson could not "make out what they [were] saying because [her] windows were up." According to Jackson, at first, she thought there had been a "fender bender." When asked if Suarez appeared to be angry, Jackson replied that he did not. Suarez was "just having a conversation with the person in front of him." When asked if Suarez appeared to be yelling, Jackson replied, "No." Jackson was asked if there was anything about the interaction that led her to believe it was serious. Jackson again replied, "No." Jackson testified Suarez then turned "around as if he was getting back into his car so we [could] go on, but he got maybe to his [side]view mirror and he turned back around." Jackson continued, "And when he turned back around to—he went back towards the car in front of him, that's when we heard the shots." Jackson was then asked whether she saw or heard anything that would have caused Suarez to turn around. Jackson replied, "My indication as far as maybe he turned around is because maybe the man said something. I don't know." Jackson said that when Suarez turned around to approach the car in

front of him, he "was saying something, I don't know what." Jackson "could see that his mouth was moving, and that's when the person shot him." Jackson heard gunshots in a quick, repetitive fashion: "It was like a pop, pop, pop, pop."

Jackson was clear in her testimony that Suarez never got back into his car. She was also clear that she never saw Suarez with any weapons. She also never saw Suarez physically assault anyone.

Officer Shawn Hassold testified that at the scene of the shooting, he saw a Glock pistol in an open bag on the backseat of Powell's car. He spoke with Crystal Davis who had been a passenger in Powell's vehicle. According to Officer Hassold, Davis appeared to be in shock and was very upset. She was yelling and "screaming profanities." Officer Hassold asked Davis what had happened, and Davis stated that "she had been drinking or she was intoxicated," and that was the reason why she was not driving. She said, "He was hitting my window." Another officer interrupted and told Officer Hassold to give Davis *Miranda* warnings. After the warnings were given, Davis stated, "I don't know what happened."

Detective Judy Avilez of the Converse Police Department testified that Powell admitted to lying during his first interview with the police. During that first interview, Powell stated that his friend Jacob Campbell had left before the shooting. However, when the police saw the surveillance videos and realized Powell had lied, Detective Avilez questioned Powell again. Powell admitted that he had lied and that Campbell had not left until after the shooting. Detective Avilez testified Powell said there was "a dime bag of marijuana that belonged to Mr. Powell" in the car, and Campbell grabbed the bag of marijuana and left the scene on foot. Thus, there was evidence that Powell had admitted to lying during his recorded statement to police and that Powell had admitted to possessing an illegal substance during the shooting.

Dr. Rajesh Kannan, the chief medical examiner, testified that Suarez died as a result of three gunshot wounds. A toxicology report found the presence of methamphetamine and alcohol in Suarez's body. According to Dr. Kannan, "there was no evidence of a close-range fire" on Suarez's body.

Lieutenant Gil Martinez assisted in taking inventory from Suarez's and Powell's vehicles. A pistol was recovered from a purse in Powell's vehicle. Two knives were found in Suarez's vehicle.

Leila Pierre, Suarez's sister, described Suarez as nonviolent and protective. According to Pierre, Suarez was not likely to start a fight but would not back down from one. Pierre testified that Suarez was a member of Latin Skulls, a motorcycle club. She expressed surprise at the toxicology report indicating that methamphetamine was found in Suarez's system.

In his brief, Powell argues no rational jury would have determined there was sufficient evidence to overcome the presumption of reasonableness in Powell's belief that he needed to use deadly force against Suarez. *See* TEX. PENAL CODE § 9.32(b). Powell points to evidence that Suarez had methamphetamine and alcohol in his system, belonged to a motorcycle gang, and had knives in his car. Powell also emphasizes his own version of events as relayed in his police interrogation video. However, in viewing all the evidence in the light most favorable to the prosecution, we conclude that "[t]here is sufficient evidence in the record to rationally support the jury's rejection of appellant's version of the events." *Braughton*, 569 S.W.3d at 611. While Powell argues that he said and did nothing to cause Suarez's actions, portraying himself as being an "innocent" party who was "chased down" by Suarez, the evidence shows a more complicated version of events.

First, the jury heard evidence that Powell admitted to lying to the police during his first interrogation when he failed to mention the presence of the third person in his car during the

shooting. Only after investigators saw the third person in Powell's vehicle on surveillance video did Powell admit a third person had been present, stating he had given the bag of marijuana in his car to the third person who then left on foot.

Further, the surveillance video is not consistent with the version of events Powell told police investigators. Powell claimed that Suarez had been "staring" at him and his wife in some sort of malevolent manner. However, the surveillance video does not show Suarez staring at Powell and his wife in any fashion. The surveillance video shows that Powell parked his car and entered the store with Campbell. A minute later, Suarez parked and, within twenty seconds of parking, entered the store. The surveillance video does not show Suarez "staring down" Powell's wife. The surveillance video from inside the store shows no interaction between the parties. Powell and Campbell then exited the store. Powell entered the driver's seat while Campbell pumped gasoline. Suarez then walked to his car and began pumping gas. Again, the surveillance video does not show Suarez "staring down" Powell and his wife. The surveillance video reflects that Suarez and Campbell pumped gas on opposite sides of the gasoline pump for a total of twenty seconds. Campbell then entered Powell's car, and within ten seconds, Powell drove away.

The surveillance video shows a reaction from Suarez when Powell's car circled back in the direction of Suarez's gasoline pump and slowed down. The video shows Powell's window being lowered and words being exchanged between Powell and Suarez. Suarez then gestured as Powell's car drove away. Suarez immediately stopped pumping gasoline and sped off in the same direction as Powell. This surveillance footage contradicts Powell's version of events as being a completely "innocent" party who is surprised that Suarez followed him from the convenience store.

Further, Jackson, an eyewitness to the shooting who was in the car behind Suarez's car, testified that she saw no aggressive actions by Suarez, believing that there must have been a

"fender bender." She saw no weapon in Suarez's hand. Jackson further testified that Suarez went back towards his car and changed his mind when he reached his driver-side window. She testified Suarez was merely talking "when the person shot him." Jackson was clear in her testimony that she did not see Suarez with any weapons, did not see Suarez physically assault anybody, did not see Suarez strike a vehicle or any other object, and did not see Suarez throw anything. From all this evidence, a rational jury could have rejected Powell's version of events and determined that his use of deadly force was not immediately necessary to prevent Suarez from using deadly force against him. *See Braughton*, 569 S.W.3d at 610-11 (explaining that while the dissenting opinion argued the answer to the sufficiency issue hinged on the applicability of the presumption of reasonableness established in section 9.32(b), "the jury here could have rationally determined that appellant did not have any 'reason to believe' that the complainant 'was committing or attempting to commit robbery or murder at the time that appellant shot him' and thus the evidence was sufficient 'to rationally support the jury's rejection of appellant's version of events'"). In viewing all the evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt and also could have found against Powell on the self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. We thus hold that the evidence was sufficient to support the jury's implicit rejection of Powell's self-defense claim.

## JURY CHARGE

The jury charge in this case instructed the jury that Powell stood charged by indictment with the offense of murder, alleged to have been committed on or about April 9, 2021, in Bexar County, Texas, and that Powell had pled not guilty. The charge then instructed the jury that a person commits murder if he (1) intentionally or knowingly causes the death of an individual, or

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. The charge explained that if the jury unanimously found from the evidence beyond a reasonable doubt that on or about April 9, 2021 in Bexar County that Powell "did intentionally or knowingly cause the death of an individual, namely, Ibrahim Suarez, by shooting Ibrahim Suarez with a deadly weapon, namely, a firearm;" or "with intent to cause seriously bodily injury" to Suarez, "did commit an act clearly dangerous to human life that caused the death of" Suarez "by shooting [him] with a deadly weapon, namely, a firearm;" then the jury should "next consider whether Christopher Lee Powell acted in self-defense, and proceed to paragraph 5." The jury was further instructed that if it did "not so find beyond a reasonable doubt, or if [it] ha[d] a reasonable doubt thereof," it should find Powell not guilty and should not consider paragraph 5.

In paragraph 5 of the charge, the jury was instructed about the law of self-defense. Tracking section 9.31(a) of the Texas Penal Code, the jury was instructed that "it is a defense to this prosecution if the conduct of the defendant was justified by law," and that a "person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." *See* TEX. PENAL CODE § 9.31(a). Tracking section 9.32(a)(1)-(2)(A) of the Penal Code, the jury was instructed about the use of deadly force:

A person is justified in using deadly force against another:

(1) If the person would be justified in using force against the other in the first place, as set out above; and

(2) When and to the degree the person reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force.

*See* TEX. PENAL CODE § 9.32(a)(1)-(2)(A). The jury was instructed that the "use of force against another is not justified in response to verbal provocation alone" and that a "person has a right to defend from apparent danger to the same extent as he would had the danger been real provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time." The jury was given the applicable definitions of "reasonable belief" and "deadly force." *See* TEX. PENAL CODE § 1.07(a)(42) (definition of "reasonable belief"); *id.* § 9.01(3) (definition of "deadly force"). Tracking section 9.32(c), the jury was then instructed that there was no duty to retreat in certain circumstances:

> A person (1) who has a right to be present at the location where the deadly force is used, and (2) who has not provoked the person against whom the deadly force is used (or, if he had, the actor abandoned the encounter), and (3) who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force. If all three of these factors are met, then in determining whether such actor reasonably believed that the use of force was necessary, a finder of fact may not consider whether the actor failed to retreat.

*See* TEX. PENAL CODE § 9.32(c).

Tracking the language of section 9.32(b), the jury was then instructed about when the presumption of reasonableness applied:

> You are instructed that the defendant's belief that the deadly force was immediately necessary is presumed to be reasonable if the defendant:
>
> (1) knew or had reason to believe that the person against whom deadly force was used
>   a. unlawfully and with force entered, or was attempting to enter unlawfully and with force, the defendant's vehicle; or
>   b. unlawfully and with force removed, or was attempting to remove unlawfully and with force, the defendant from his vehicle; and
>
> (2) the defendant did not provoke the person against whom the force was used (or, if he has, the actor abandoned the encounter); and
>
> (3) the defendant was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

*See* TEX. PENAL CODE § 9.32(b). The charge further explained that this "presumption of reasonable belief applies unless the State proves beyond a reasonable doubt that the facts giving rise to the presumption to not exist." The charge continued,

> If the State fails to prove beyond a reasonable doubt that the facts giving rise to the presumption do not exist, the jury must find that the presumed facts exist. If the jury has a reasonable doubt as to whether the facts giving rise to the presumption do not exist, the presumption applies and the jury must consider the presumed fact to exist. Even if the jury finds that the State has proven beyond a reasonable doubt that the facts giving rise to the presumption do not exist, the State must prove beyond a reasonable doubt each of the elements of the offense charged in the indictment, as instructed in this charge.

> The defendant is not required to prove self-defense. The [S]tate must prove beyond a reasonable doubt that the defendant's conduct was not justified by self-defense.

The charge then applied the above law to the facts:

> Now, keeping in mind these instructions, even if you unanimously find that the State has proven beyond a reasonable doubt that the defendant, Christopher Lee Powell, committed the charged offense of murder, you must next decide whether the State has proven beyond a reasonable doubt that the conduct was not justified by self-defense.

> Therefore, if you find from the evidence beyond a reasonable doubt that the defendant, Christopher Lee Powell, committed the offense of murder, as charged in the indictment and as instructed in Paragraph 4;

> But you further find from the evidence that, or you have a reasonable doubt as to whether, at the time he did so;

> > (1) Christopher Lee Powell reasonably believed, or is presumed to have reasonably believed, as viewed from his standpoint, that Ibrahim Suarez was using or attempting to use unlawful deadly force against Christopher Lee Powell; and
> > (2) Christopher Lee Powell reasonably believed, or is presumed to have reasonably believed, as viewed from his standpoint, that his use of deadly force and the degree of deadly force used were immediately necessary to protect himself against Ibrahim Suarez's use or attempted use of unlawful deadly force; and
> > (3) Christopher Lee Powell's use of deadly force was not in response to verbal provocation alone;

Then, you will acquit the defendant, Christopher Lee Powell, and say by your verdict "not guilty."

However, if you find from the evidence beyond a reasonable doubt that the defendant, Christopher Lee Powell, committed the offense of murder, as charged in the indictment and as instructed in Paragraph 4;

And you further find from the evidence beyond a reasonable doubt that:

> (1) Christopher Lee Powell did not reasonably believe, and is not presumed to have reasonably believed, as viewed from his standpoint, that Ibrahim Suarez was using or attempting to use unlawful deadly force against Christopher Lee Powell; or
> (2) Christopher Lee Powell did not reasonably believe, and is not presumed to have reasonably believed, as viewed from his standpoint, that the use of deadly force and degree of deadly force used was immediately necessary to protect himself against Ibrahim Suarez's use or attempted use of unlawful deadly force; or
> (3) Christopher Lee Powell's use of deadly force was in response to verbal provocation alone;

Then you will find against the defendant, Christopher Lee Powell, on his justification defense and find the defendant guilty of the offense of murder as charged in the indictment.

*A. Standard of Review*

On appeal, Powell brings six issues complaining about the jury charge—none of which were brought to the trial court's attention at trial. "In reviewing charge error, we must first determine whether error exists." *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). "If we find error, we must then determine whether the error caused sufficient harm to require reversal." *Id*. (citing *Almanza*, 686 S.W.2d at 171). The "degree of harm necessary for reversal depends upon whether the error was preserved." *Id*. (citing *Almanza*, 686 S.W.2d at 171). "Error properly preserved by an objection to the charge will require reversal as long as the error is not harmless." *Id*. (citing *Almanza*, 686 S.W.2d at 171). The court of criminal appeals has "interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal." *Id*. (citing *Almanza*, 686 S.W.2d at

171). "But when the charging error is not preserved, a greater degree of harm is required, and this standard of harm is described as egregious harm." *Id*. (citing *Almanza*, 686 S.W.2d at 171). "Errors that result in egregious harm are those affecting the 'very basis of the case,' those depriving 'the defendant of a valuable right' or those that 'vitally affect a defensive theory.'" *Id*. (citing *Almanza*, 686 S.W.2d at 171). With respect to his appellate complaints about the jury charge, Powell did not object to the jury charge at trial. Thus, any error by the trial court will be assessed for egregious harm.

### B. *Powell's First Jury Charge Complaint*

Powell argues that when the trial court tracked the language of section 9.32(b) in the jury charge and instructed the jury on the presumption of reasonableness, it should have also included a definition for the term "provoke." *See* TEX. PENAL CODE § 9.32(b)(2). For support, Powell relies on caselaw where the Texas Court of Criminal Appeals has held that a charge on provoking the difficulty pursuant to section 9.31(b)(4)[1] is permitted when there is sufficient evidence to support three elements: (1) the defendant did some act or used some words that provoked the attack on him; (2) such act or words were reasonably calculated to provoke the attack; and (3) the act was done, or the words were used, for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other. *See Elizondo v. State*, 487 S.W.3d 185, 198-201 (Tex. Crim. App. 2016); *Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998). According to Powell, the trial court erred by failing to define "provoke" in the "presumption of reasonableness" portion of the jury charge in the same way as "provoke" is defined in *Elizondo* and *Smith*. Powell, however, has cited no authority that would require "provoke" to be defined in a jury charge

---

[1] Section 9.31(b)(4) provides that the "use of force against another is not justified: . . . (4) if the actor provoked the other's use or attempted use of unlawful force, unless: (A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and (B) the other nevertheless continues or attempt to use unlawful force against the actor . . . ." TEX. PENAL CODE § 9.31(b)(4).

instructing the jury on the statutory presumption language of section 9.32(b)(2). Additionally, Powell has cited no authority supporting his argument that the use of the word "provoke" in the statutory presumption language of section 9.32(b)(2) should be treated the same as a provoking the difficulty instruction under section 9.31(b)(4). "Provoking the difficulty" under section 9.31(b)(4) acts as a full restriction or total restraint on the defendant's right to self-defense. *See Smith*, 965 S.W.2d at 513 ("[I]f the defendant employs provocation with intent to assault the victim, and provokes an attack and makes an assault, then self-defense is lost as to the assault."). In contrast, the use of "provoke" in section 9.32(b)(2)'s statutory presumption language does not provide a full restriction or total restraint on the defendant's right to self-defense. *See* TEX. PENAL CODE § 9.32(b)(2). "Provoke" under section 9.32(b)(2) could potentially limit the presumption of reasonableness, but a jury could determine the presumption of reasonableness did not apply and still find that a defendant had a reasonable belief to act in self-defense. *See id*. § 9.32. Thus, we decline to hold that the trial court erred in failing to define "provoke" in the charge as it is defined in *Elizondo* and *Smith*.

Powell further argues in the alternative that the trial court should have excluded any mention of the word "provoke" within the statutory presumption of reasonableness instruction. Powell cites no caselaw supporting this assertion. We conclude that the trial court's tracking of section 9.32(b)'s statutory presumption language was not error. *See Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994) ("A jury charge which tracks the language of a particular statute is a proper charge on the statutory issue."); *Gonzalez v. State*, No. 13-23-00025-CR, 2024 WL 2349321, at *11 (Tex. App.—Corpus Christi-Edinburg May 23, 2024, no pet.) (concluding that "the trial court did not err by simply discussing provocation as an element of self-defense") (not designated for publication).

### C. Powell's Second Jury Charge Complaint

Powell also argues that the trial court should have omitted the term "provoke" from the charge's instruction on a person's right not to retreat under section 9.32(c) because there was no evidence by which the jury could find "the three elements of provocation." Once again, Powell relies on caselaw where the Texas Court of Criminal Appeals has held that a charge on provoking the difficulty pursuant to section 9.31(b)(4) is permitted when there is sufficient evidence to support three elements: (1) the defendant did some act or used some words that provoked the attack; (2) such act or words were reasonably calculated to provoke the attack; and (3) the act was done or the words were used with the intent to create a pretext for inflicting harm upon the other. *See Elizondo*, 487 S.W.3d at 198-201; *Smith*, 965 S.W.2d at 513. We agree with the State that Powell is attempting to extend the reasoning of *Elizondo* and *Smith* beyond their holdings. Powell fails to provide any authority for the proposition that the reasoning of *Elizondo* and *Smith* apply to the statutory right not to retreat found in section 9.32 (c) and (d).[2] Similar to the discussion above, the term "provoked" in the right not to retreat language found in section 9.32(c) does not work to create a complete bar to the defendant's right to self-defense. *See* TEX. PENAL CODE § 9.32(c). We thus decline to extend the reasoning found in *Engel*, *Elizondo*, and *Smith* to the right not to retreat language found in section 9.32(c). Again, while Powell argues the word "provoke" should have been excluded in this portion of the charge, we find no error by the trial court in tracking the statutory language. *See Gonzalez*, 2024 WL 2349321, at *11 (concluding that "the trial court did not err by simply discussing provocation as an element of self-defense"); *see also Riddle*, 888

---

[2]Section 9.32(c) provides that a "person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force." TEX. PENAL CODE § 9.32(c). Section 9.32(d) provides that for purposes of "determining whether an actor described by subsection (c) reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat." *Id*. § 9.32(d).

S.W.2d at 8 ("A jury charge which tracks the language of a particular statute is a proper charge on the statutory issue.").

### D. Powell's Third Jury Charge Complaint

In his next issue, Powell argues that in instructing the jury on the presumption of reasonableness in the use of deadly force, the trial court erred by omitting an application paragraph and by failing to explain how to use the presumption. According to Powell, "[t]here is nothing explaining to the jury what 'the facts giving rise to the presumption' are." Powell argues that the jury charge "does not tell the jury it is required to find that Powell's belief that deadly force was immediately necessary is presumed to be reasonable (unless the State disproves the presumption beyond a reasonable doubt)."

In reviewing the jury charge, immediately following the elements of the presumption of reasonableness, the charge instructed the jury that "the presumption of reasonable belief applies unless the State proves beyond a reasonable doubt that the facts giving rise to the presumption do not exist." The charge further explained that if the State failed to prove the facts that negate the presumption, then the presumption of reasonableness exists. Therefore, the charge correctly instructed the jury on the presumption of reasonableness. The State points out that while Powell argues the trial court should have referenced "what facts" the charge was referring to, any listing or pointing out of any facts by the trial court would have been an impermissible comment on the weight of the evidence. *See* TEX. CODE CRIM. PROC. art. 36.14. In reviewing the charge, we agree that the charge clearly stated the State had the burden to prove that the presumption did not apply and that if the State failed in its burden, then the jury was to presume that Powell had a reasonable belief. We thus find no error by the trial court.

*E.  Powell's Fourth and Fifth Jury Charge Complaint*

Powell argues that the trial court erred by omitting language from the charge's self-defense instruction that Powell was justified in using deadly force against another to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. The jury charge tracked the language of section 9.32(a)(1)-(2)(A) when it instructed the jury the following:

> A person is justified in using deadly force against another: (1) [i]f the person would be justified in using force against the other in the first place, as set out above; and (2) [w]hen and to the degree the person reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force.

*See* TEX. PENAL CODE § 9.32(a)(1)-(2)(A). Powell complains that the jury charge did not also include the following language from section 9.32(a)(2)(B):

> when and to the degree the actor reasonably believes the deadly force is immediately necessary: . . . (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

*See id*. § 9.32(a)(2)(B). According to Powell, the evidence supported such an instruction being given to the jury, and thus the trial court erred in not including this language in the charge's self-defense instruction. Powell also argues that because the trial court should have included a jury instruction relating to section 9.32(a)(2)(B), the trial court also should have included similar language relating to section 9.32(b)'s statutory presumption instruction. Thus, Powell argues the statutory presumption portion of the jury charge should have read as follows:

> The actor's belief under [section 9.32(a)(2)] that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor: (1) knew or had reason to believe that the person against whom the deadly force was used: . . . (C) was committing or attempting to commit an offense described by [section 9.32(a)(2)(B)].

*See* TEX. PENAL CODE § 9.32(b)(1)(C).

"Regardless of the strength or credibility of the evidence, a defendant is entitled to an instruction on any defensive issue that is raised by the evidence." *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020). A defensive issue is raised by the evidence if there is sufficient evidence to support a rational jury finding as to each element of the defense. *Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007). A "defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that [the] element is true." *Id*.

According to Powell, State's Exhibit 91, the video of his police interrogation, supports the instruction. In the video, Powell stated that at the convenience store, Suarez was "staring at [him] very intrusively." According to Powell, his wife then told him that Suarez had been "staring at [her] the whole time" and was "creeping [her] out." Powell told the police that as he drove by the gasoline pump where Suarez was pumping gasoline, Suarez threw "his hands up" and "call[ed] [Powell] a bitch." Powell then stated that Suarez followed him to where Powell was stopped at a red light, got out of his car, was "angrily gesturing," and was yelling "You're a bitch!" at him. According to Powell, Suarez, with his bare fists, hit Powell's driver's side window while yelling. Suarez went back to his car, but before he could get into his car, turned around and began walking back to Powell's car. Powell stated that he did not see Suarez with a weapon. Powell told the police that when Suarez was "still at a distance from [Powell]," Powell shot a "warning shot" back in Suarez's direction. Powell stated that Suarez "kept coming" and made a couple of more steps. Powell then shot Suarez three times.

These statements made by Powell in his police interrogation do not support a self-defense instruction that Powell reasonably believed deadly force was immediately necessary to prevent the Suarez's imminent commission *of aggravated kidnapping, murder, sexual assault, aggravated*

*sexual assault, robbery, or aggravated robbery*. Evidence that Suarez stared at someone, yelled, "threw hands up," gestured angrily, and banged on the driver's window is not evidence from which someone could reasonably believe Suarez was *in the imminent commission* of an aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. Therefore, we conclude there was no error by the trial court in not submitting an instruction tracking the language of section 9.32(a)(2)(B) and by not including similar language in the charge's statutory presumption instruction.

### F. *Powell's Sixth Jury Charge Complaint*

Powell argues that the trial court erred by failing to include an instruction relating to section 9.04's threats as justifiable force. Section 9.04 provides that the "threat of force is justified when the use of force is justified by this chapter." TEX. PENAL CODE § 9.04. "For purposes of this section, a threat to cause death or serious bodily injury by the production of weapon or otherwise, as long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute the use of deadly force." *Id*. Powell, however, was not entitled to an instruction under section 9.04 because he used deadly force and not simply apprehension of deadly force. *See Pham v. State*, 639 S.W.3d 708, 713 (Tex. Crim. App. 2022) (explaining that when there is "an actual use of deadly force rather than the creation of a mere apprehension of the use of deadly force . . . [an] [a]ppellant [is] not entitled to an instruction under section 9.04"). We therefore conclude the trial court did not err by not including an instruction pursuant to section 9.04.

**PROSECUTORIAL MISCONDUCT**

Pointing to statements made by the prosecutor during closing argument, Powell argues "the State engaged in prosecutorial misconduct by arguing that Powell must have provoked Suarez to

react by using a racial slur, with only the 911 call to point to and inviting the jury to speculate on the rest." Powell, however, did not object to these statements made by the prosecutor in closing argument and thus has forfeited his right to complain on appeal about any improper jury argument. *See Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

Nevertheless, Powell argues that he did not need to object because the prosecutor's statements during closing argument amounted to fundamental error. In *Hernandez v. State*, 538 S.W.3d 619, 622-23 (Tex. Crim. App. 2018), the court of criminal appeals rejected this argument, explaining that the "right to a trial untainted by improper jury argument is forfeitable" and that "[e]ven an inflammatory jury argument is forfeited if the defendant does not pursue his objection to an adverse ruling." The court noted that the appellant had argued it should "hold that error preservation was not required here due to the egregious nature of the prosecutor's argument." *Id*. at 623. The court declined to do so, emphasizing that it would "not elevate the right to be free of improper jury argument to the status of an absolute requirement like jurisdiction." *Id*. Thus, the court held that "[e]rroneous jury argument must be preserved by objection pursued to an adverse ruling; otherwise, any error from it is waived." *Id*.; *see also Morris v. State*, 460 S.W.3d 190, 197 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (rejecting appellant's argument that the prosecutor's closing argument was "incurable fundamental error" by explaining that "[e]ven if the State's argument were incurable and rose to the level that it deprived appellant of his right to due process of law, appellant waived this complaint by failing to object in the trial court"); *Temple v. State*, 342 S.W.3d 572, 603 (Tex. App.—Houston [14th Dist.] 2010) ("A defendant must object each time an improper argument is made, or he waives his complaint, regardless of how egregious the argument."), *aff'd on other grounds*, 390 S.W.3d 341 (Tex. Crim. App. 2013).

We note that in support of his argument of prosecutorial misconduct through improper jury argument, Powell cites an opinion from this court: *Bautista v. State*, 363 S.W.3d 259, 263 (Tex. App.—San Antonio 2012, no pet.), which in turn quoted *Rogers v. State*, 725 S.W.2d 350, 359-60 (Tex. App.—Houston [1st Dist.] 1987, no pet.). The full quote from *Rogers* states the following:

> An additional fact to consider is whether the prosecutor asked the question in bad faith. *Carrillo v. State*, 591 S.W.2d 876, 893 (Tex. Crim. App. 1979). *Where there is serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process or, even worse, transforms the trial into a farce and mockery of justice*, as occurred here, *resulting in deprivation of fundamental fairness and due process of law*, the defendant is entitled to a new trial even though few objections have been perfected. *See Berger v. United States*, 295 U.S. 78, 84, 88 (1935); *Ruth v. State*, 522 S.W.2d 517 (Tex. Crim. App. 1975); *Kerns v. State*, 550 S.W.2d 91 (Tex. Crim. App. 1977).

*Rogers*, 724 S.W.2d at 359-60 (emphasis in original).

The facts as described in this quote from *Rogers* are distinguishable from the facts presented here. First, *Rogers* noted that "few objections have been perfected." *Id*. at 360. Here, none have been perfected. Second, unlike in *Rogers*, the record in this case does not reflect a "serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process" or one that "transform[ed] the trial into a farce and mockery of justice," which "resulted in deprivation of fundamental fairness and due process of law." *Id*. *Rogers* describes rare and highly prejudicial circumstances of prosecutorial misconduct. The record in this appeal simply does not support such allegations of prosecutorial misconduct. Indeed, we conclude the prosecutor's jury argument in this case was based on evidence presented and was a reasonable deduction from the evidence. *See Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019) (explaining that permissible jury argument falls within four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement); *Williams v. State*, 688 S.W.2d 486, 491 (Tex. Crim. App. 1985)

(stating that while attorneys may not inject speculative evidence outside the record in jury argument, they may draw all reasonable, fair, and legitimate inferences from the facts in evidence).

## COURT COSTS

In his final issue, Powell argues the evidence is insufficient to support the trial court's determination of court costs in the amount of $9,750.00 because the record does not contain a bill of costs or delineate which portion of that amount is attorney's fees and which portion are legislatively mandated court costs. Powell emphasized in his brief that he was found to be indigent, was appointed trial counsel, and remained indigent throughout the pendency of his trial. In response to Powell's argument, the State explained that the proper analysis is not whether there was sufficient evidence to prove the court costs, but whether there was a basis for the cost. *See Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). The State agreed the clerk's record did not contain a certified bill of costs, but stressed the record could be supplemented to include the certified bill of costs, which would, in turn, provide a basis for the assessment of court costs. *See Littleton v. State*, 619 S.W.3d 724, 732 (Tex. App.—San Antonio 2017, no pet.); *cf. Johnson v. State*, 423 S.W.3d 385, 392 (Tex. Crim. App. 2014) ("The document in the supplemental clerk's record is a bill of costs for purposes of court costs assessed in a criminal action or proceeding, and the court of appeals erred when it failed to consider the supplemental bill of costs."). Thus, the State requested that the trial court clerk supplement the clerk's record.

In response to the State's request, a supplemental clerk's record that included the certified bill of costs was filed. It reflected court costs in the amount of $290.00. The State then filed a letter stating it would not be filing an amended brief in response to the issue of court costs. Powell then filed an amended brief agreeing court costs should be modified to $290.00. Therefore, in conformity with the certified bill of costs, we modify the judgment to delete court costs of

$9,750.00 and instead assess court costs in the amount of $290.00. As modified, the judgment of the trial court is affirmed.

Adrian A. Spears II, Justice

DO NOT PUBLISH